Robert Wright
White and Williams LLP
The Legal Center , One Riverfront Plaza
1037 Raymond Boulevard, Suite 230
Newark, NJ 07102-5425
Phone: 201.368.7200
*Attorneys for Plaintiff Metropolitan Life Insurance Company*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| METROPOLITAN LIFE INSURANCE COMPANY, | CIVIL ACTION |
| Plaintiff, | |
| v. | |
| HOPE DUKES | |
| Defendant. | |

## COMPLAINT

Plaintiff, Metropolitan Life Insurance Company (hereinafter "MetLife"), by and through its attorneys, White and Williams, LLP by way of Complaint against Defendant, Hope Dukes (hereinafter "Defendant" or "Dukes"), alleges as follows:

### JURISDICTION AND VENUE

1.      Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1332, as the controversy is between citizens of different states and exceeds the sum of $75,000.00 exclusive of interest and costs.

2.      Venue is laid in the United States District Court for the District of New Jersey pursuant to 28 U.S.C. § 1391(b)(1) as being the judicial district in which Dukes resides.

14719270v.1

-2-

3. Venue is laid in the United States District Court for the District of New Jersey pursuant to 28 U.S.C. § 1391 (b)(2), as being the judicial district in which a substantial part of the events or omissions giving rise to the claim occurred.

## PARTIES

4. MetLife avers that at all times pertinent hereto, it was and is an insurance company organized and existing by virtue of the laws of the State of New York, having its principal place of business in the State of New York.

5. Dukes is an individual adult residing at 260 Voorhees Street, Teaneck, New Jersey 07666.

## THE APPLICATION

6. On November 28, 2012, Dukes applied to MetLife for an individual disability income insurance policy.

7. A true and complete copy of the application signed by Dukes and submitted to MetLife is attached hereto and incorporated by reference in this Complaint as **Exhibit 1** (hereinafter "Application").

8. In the Application, Dukes made factual representations regarding her health history.

9. In response to question 4(b) of the Application, at Part B, Dukes denied that she had, in the previous 5 years, been examined or treated by any Acupuncturist, Chiropractor, Counselor, Health Facility, Practitioner, Psychiatrist, Psychologist, Social Worker or Therapist other than the physicians listed in response to question 4(a) of the Application, at Part B.

10. In response to question 5(a) of the Application, at Part B, Dukes denied that she had ever received treatment, attention or advice for, been told that she had; or had any known

indication of any disease or disorder of the heart; arteries or veins; chest pains; high (hypertension) or low (hypotension) blood pressure.

11. In response to question 5(b) of the Application, at Part B, Dukes denied that she had ever received treatment, attention or advice for, been told that she had; or had any known indication of arthritis; any disease, disorder or deformity of the bones, muscles, tendons, or joints, including the spine; any neck or back problems or disorders; carpal tunnel syndrome; any auto immune diseases such as Lupus or Scleroderma.

12. In response to question 5(c) of the Application, at Part B, Dukes denied that she had ever received treatment, attention or advice for, been told that she had; or had any known indication of any mental, nervous or emotional problem, condition or disorder, including anxiety, depression or stress.

13. In response to question 5(h) of the Application, at Part B, Dukes denied that she had ever received treatment, attention or advice for, been told that she had; or had any known indication of any disease or disorder of the liver, gall bladder, pancreas, digestive tract, including intestines; ulcer, colitis, hemorrhoids, or hernia.

14. In response to question 5(j) of the Application, at Part B, Dukes denied that she had ever received treatment, attention or advice for, been told that she had; or had any known indication of any disease or disorder of the urinary tract or kidney, sugar, albumin or blood in urine.

15. In signing the Application for disability income insurance coverage at page 11 on November 28, 2012, Dukes certified that the statements and answers in the Application were true and complete; that all of the information was correctly recorded in the Application; and that such

written statements may be relied upon by MetLife in order to determine if Dukes qualified for issuance of a policy.

16. In signing the Application for disability income insurance coverage, Dukes further certified that the policy would not be in effect and MetLife would not have liability until: (a) a policy is delivered and is accepted by Dukes; and (b) the full first premium is paid.

17. In signing the Application for disability income insurance coverage, Dukes further certified that the policy will then be in effect as of its date of issue if at the time it is delivered: (a) the condition of Duke's health, the amount of her income, and the status of her employment or occupation are the same as given in the Application, and (b) Dukes has not received any medical advice or treatment from a physician or other medical practitioner since the date of the Application. If there are any exceptions to (a) or (b), the policy will not be in effect and Dukes will give MetLife details in writing.

18. On December 11, 2012, Dukes appeared for a paramedical examination and completed Part II of the Application.

19. A true and complete copy of Part II of the Application is attached hereto and incorporated by reference herein as **Exhibit 2** (hereinafter "Paramedical/Medical Exam").

20. In pages 1 and 2 of the Paramedical/Medical Exam, Dukes made factual material misrepresentations regarding her then existing medical history, including, but not limited to, her responses to questions 3, 5(a), 5(d), 5(g),5(j), 6, and 8.

21. In signing the Paramedical/Medical Exam on December 11, 2012, Dukes certified that she had read the answers to questions 2-14 and any statements made by her before signing. She further certified that the answers and statements correctly reflect the answers and statements

14719270v.1

given by her and are true and complete to the best of her knowledge and belief and that there are no exceptions to any such answers or statements other than as written.

22. On January 30, 2013, Dukes signed an Application Amendment.

23. A copy of the Application Amendment signed by Dukes and submitted to MetLife is attached hereto and incorporated by reference in this Complaint as **Exhibit 3** (hereinafter "Application Amendment").

24. In the Application Amendment, Dukes made factual material misrepresentations regarding her then existing medical history.

25. In signing the Application Amendment, Dukes certified that the Application Amendment is part of the Application and is subject to the agreements in that Application. The application and the Application Amendment are part of the policy/contract to which they are attached.

26. In signing the Application Amendment, Dukes further certified that "To the best of my knowledge and belief, the statements and answers in the application as amended by this form are true and complete as of the date this form is signed. There are no facts or circumstances which would require a change in the answers in the application, except as shown above."

27. On January 30, 2013, after signing the Application Amendment, Dukes took delivery of MetLife Disability Income Policy number 6 653 166 AH (hereinafter "Policy").

28. In justifiable reliance upon the representations made by Dukes in the Application, as amended by the Application Amendment and the Paramedical/Medical Exam and in consideration of the payment of the first premium, MetLife issued and delivered the Policy to Dukes effective January 1, 2013.

29. The Policy is attached hereto and incorporated by reference in this Complaint as **Exhibit 4**.

30. Dukes accepted delivery of the Policy.

31. On or about February 8, 2013, MetLife received first notice of Dukes' intent to file a claim for benefits under the Policy.

32. Subsequently, Dukes executed and submitted an Initial Claim for Disability Benefits form to MetLife, dated February 12, 2013 which was received by MetLife on March 4, 2013.

33. In the course of administering Dukes' claim for benefits, MetLife obtained records, documents and information pertaining to Dukes and particularly, her health history.

34. As a result of its claim administration, investigation and evaluation, MetLife learned that the statements made by Dukes at the time of applying for the Policy were misleading, misstatements, not accurate, intentionally false, incomplete and otherwise false and untrue, to wit: treatment for atypical migraine; non-cardiac chest pains; treatment for stress and anxiety; evaluations and treatment for complaints of headaches, chest pain, numbness in arms and hands, face pain, increased appetite, frequent urination; consultation with a GI specialist for years of chronic constipation; chronic low back pain bilaterally, more at left going down her leg, radiculopathy; physical therapy for lower back sciatica; prescription of Citalopram medication by Dr. Alicia Skarimbas; and lumbosacral problems diagnosed as L4-L5 radiculopathy for approximately 5 years with complaints of inability to continue the same work without restriction or pain when working which requires long period of sitting.

35. Medical records of treatment and care provided prior to the Application, Paramedical/Medical Exam and Application Amendment by Kasing Ho, M.D., Walgreens,

-6-

Englewood Cliffs Physical Therapy and Dr. Alicia Skarimbas demonstrate that Dukes made material misrepresentations about her medical and health history in applying for the Policy.

36. MetLife has advised Dukes of the undisclosed information and misrepresentations on the Application, Paramedical/Medical Exam and Application Amendment.

37. The misrepresentations made by Dukes were material in that MetLife would not have issued the Policy if it had known the truth about Dukes' medical and health history prior to the time she applied for insurance.

38. By letter dated November 21, 2013, MetLife provided Dukes with a Notice of Rescission of the Policy and the basis of its determination. (A copy of the November 21, 2013 letter is attached and incorporated by reference as **Exhibit 5**.)

39. The November 21, 2013 letter notified Dukes that MetLife was declaring the Policy rescinded, null and void because of Dukes' failure to disclose material facts in applying for the Policy, and further informed Dukes that MetLife was denying any liability under the Policy.

40. Enclosed with the November 21, 2013 letter, MetLife tendered to Dukes the premiums she had paid under the Policy, with interest.

41. Dukes has refused to negotiate the premium refund check for all sums paid as premiums under the Policy, together with interest.

42. MetLife has commenced this action within the applicable contestable period for a declaration that the Policy is rescinded due to the material misrepresentations of fact.

### COUNT I:  MATERIAL MISREPRESENTATIONS

43. MetLife incorporates by reference the preceding allegations contained in this Complaint as if fully set forth at length herein.

14719270v.1

44. In making the representations set forth in the Application, Paramedical/Medical Examination, and Application Amendment, Dukes misrepresented her medical and health history.

45. Dukes made these misrepresentations to induce MetLife to issue her a policy of disability income insurance.

46. The misrepresentations made by Dukes in the Application, Paramedical/Medical Examination and Application Amendment were material to the risk assumed by MetLife in issuing the Policy.

47. MetLife justifiably relied on the misrepresentations in the Application, Paramedical/Medical Exam and Application Amendment in deciding to issue Dukes the Policy.

48. Had MetLife known the facts misrepresented by Dukes, or other aspects of Dukes' true health history as may be revealed through discovery, MetLife would not have issued the Policy to Dukes.

49. MetLife is entitled to rescission of the Policy.

## FRAUDULENT AND MATERIAL MISREPRESENTATIONS

50. MetLife incorporates by reference the preceding allegations contained in this Complaint as if fully set forth at length herein.

51. In making the representations set forth in the Application, Paramedical/Medical Examination, and Application Amendment, Dukes intentionally and fraudulently misrepresented her medical and health history.

52. Dukes made these misrepresentations to induce MetLife to issue her a policy of disability income insurance.

14719270v.1

53. The misrepresentations made by Dukes in the Application, Paramedical/Medical Examination and Application Amendment were material to the risk assumed by MetLife in issuing the Policy.

54. Dukes knew that if she disclosed her true medical history, she would not have been eligible for a policy of disability income insurance from MetLife.

55. MetLife justifiably relied on the misrepresentations in the Application, Paramedical/Medical Examination and Application Amendment, in deciding to issue Dukes the Policy.

56. Had MetLife known the facts misrepresented by Dukes, or other aspects of Dukes' true health history as may be revealed in discovery, MetLife would not have issued the Policy to Dukes.

57. MetLife is entitled to rescission of the Policy.

**WHEREFORE**, MetLife respectfully demands the following relief:

a. A declaratory judgment adjudicating that the Policy was procured through Defendant's misrepresentations of material fact and failure to disclose material information to MetLife;

b. A declaratory judgment adjudicating that MetLife has no legal obligation to pay any past, present and/or future benefits to Dukes under the Policy;

c. A declaratory judgment adjudicating that the Policy is rescinded and/or void; and

d. Such other and further relief as deemed appropriate by the Court.

## JURY DEMAND

Pursuant to Fed. R. Civ. P. 38, MetLife hereby demands a trial by jury as to all issues so triable.

## CERTIFICATION PURSUANT TO L. CIV. R. 11.2

Pursuant to L. Civ. R. 11.2, the undersigned certifies that the matter in controversy is not the subject of any other action pending in any court, or of any pending arbitration or administrative proceeding.

Dated:  December 29, 2014                              WHITE AND WILLIAMS LLP

BY:   /s Robert Wright
Robert Wright
The Legal Center | One Riverfront Plaza | 1037 Raymond Boulevard, Suite 230 | Newark, NJ 07102-5425
Phone: 201.368.7200
E-mail: wrightr@whiteandwilliams.com
*Attorneys for Plaintiff Metropolitan Life Insurance Company*